# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

PORTIA A. BOULGER                                :
22822 State Route 104                :
Chillicothe, Ohio 45601,            : Case No: 2:17-cv-186
                                      :
        Plaintiff                       : Judge: _____
                                      :
        v.                               : Magistrate Judge: _____
                                      :
JAMES H. WOODS                           :
c/o Michael E. Weinsten, Esq.         :
Lavely & Singer, P.C.               :
2049 Century Park East            :
Suite 2400                                :
Los Angeles, CA 90067-2906         :
                                      :

## <u>COMPLAINT FOR MONEY DAMAGES</u>
## <u>WITH JURY DEMAND ENDORSED HEREON</u>

Plaintiff Portia A. Boulger, by and through counsel, states the following as her Complaint against Defendant James H. Woods:

## <u>PARTIES</u>

1. Plaintiff is an individual residing in Chillicothe, Ohio and is a citizen of the State of Ohio. Plaintiff is a 64--year old female who has lived in Ohio for 63 years; worked as a secretary, factory worker, carpenter, vocational instructor, teacher; and currently works part time as a volunteer tutor for K&C Learning Associates; and has for several decades been an activist for progressive causes and for the Democratic Party.

2. Defendant is a 69-year old male, and a resident and citizen of the State of California. Defendant is a well-known movie actor and producer who has appeared in a number of films including *The Way We Were*, *The Onion Field,* and *Once Upon a Time in America.*

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction of this action under 28 U.S.C. §1332(a) because the plaintiff and defendant are citizens of different states and the amount in controversy exclusive of interest and costs, exceeds $75,000.

4. This Court has personal jurisdiction over the Defendant James Woods under the Ohio long-arm statute, O.R.C. §2307.382(6) because the injury caused by Defendant James Woods—damage to Plaintiff's reputation and emotional distress—occurred in the State of Ohio; Mr. Woods' actions of defamation and false light invasion of privacy were committed with the purpose of injuring Ms. Boulger; and Mr. Woods might reasonably have expected that Ms. Boulger would be injured, in the State of Ohio, by his actions.

5. Venue is proper in the Southern District of Ohio pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in Ross County, Ohio.

## FACTUAL BACKGROUND

6. During the contest for the nomination of the Democratic Party for President in 2016, Ms. Boulger was a very active volunteer and pledged convention delegate for U.S. Senator Bernie Sanders (D-Vt), one of the candidates for the nomination.

7. On Friday March 11, 2016, the campaign of Donald J. Trump, then a candidate for the Republican nomination for President, held a rally in Chicago, Illinois.

8. That evening, the Chicago Tribune newspaper posted on its Twitter account a photograph of a woman at the rally, wearing a Trump T-shirt, and giving a Nazi salute—the well-known "Heil Hitler" salute with her right hand raised straight up.

9. Later that evening, several Twitter users posted the photograph and mis-identified the woman in the photograph as Ms. Boulger.

10. At 10:12 a.m. on Saturday, March 12, the Twitter user @voxday posted the photograph of the woman giving the Nazi salute, together with a photograph and caption relating to Ms. Boulger, and tweeted, "The "trump Nazi' is Portia Boulger, who runs the Women for Bernie.'".

11. Defendant James Woods maintains a Twitter account that featues a blue verified badge. When verifying an account, Twitter will take steps to ensure that the Twitter account is actually controlled by the person whose account it purports to be.  According to Twitter, "a blue verified badge on Twitter lets people know that an account of public interest is authentic."

12.  At about 10:12 a.m. on Saturday March 12, 2016, Mr. Woods' verified Twitter account tweeted the same picture of the woman giving the Nazi salute at the rally; with a picture of and caption relating to Ms. Boulger, identifying her as a leader of "women for Bernie" and Ohio grassroots organizer.  Mr. Woods' tweet read: "So-called #Trump 'Nazi' is a #BernieSanders agitator/operative?"

13. At about 10:12 a.m. on March 12, Mr. Trump's son, Donald Trump, Jr., re-tweeted the @voxday tweet with the comment, "Big surprise. However, the media will never run with this."

14. At about 10:14 a.m. on March 12, 2016, Mr. Trump Jr. re-tweeted Mr. Woods' tweet with the comment, "@Namaste_zen apparently you don't read the news.  She runs Bernie Sander's women for Bernie site. It's all staged."

15. On Saturday, March 12, 2016, @voxday tweeted out a correction, stating, "New reports are that the 'Trump Nazi' is not pro-Sanders Portia Boulger, but 'Birgitt Peterson of Yorkville'" Illinois.

16. Mr. Trump Jr. then quickly removed from his Twitter account the tweets referencing Ms. Boulger.

17. On Saturday afternoon, March 12, 2016, the Chicago Tribune identified the woman in the Nazi-salute photograph as Birgitt Peterson, a Trump supporter residing in Yorkville, Illinois.  The Tribune story included an interview with Ms. Peterson who explained in detail why she gave the salute at the rally. "Trump supporter explains what led to 'Heil Hitler' salute at canceled Chicago rally," http://www.chicagotribune.com/news/ct-birgitt-pterson-trump-rally=met-0313-20160312-story.html

18. On Saturday afternoon, March 12, 2016, the New York Times posted a story also identifying Ms. Peterson as the woman who made the Nazi salute at the Trump rally, and setting out its own interview with Ms. Peterson in which she explained her actions. http://www.nytimes.com/politics/first-draft/2016/03/12/trump-supporter-who-made-nazi-salute-explains-why-she-made-the gesture/?_r=0

19. Mr. Woods did not remove his tweet identifying Ms. Boulger as the woman who made the Nazi salute.  Mr. Woods' tweet was re-tweeted more than 5,000 times; his account has more than 350,000 followers.

20. Later on Saturday, March 12, Mr. Woods posted a tweet stating that some unnamed followers thought that the person in the picture might be a different person than Ms. Boulger.

21. On March 22, 2016, counsel for Ms. Boulger wrote to counsel for Mr. Woods, calling attention to the fact that Mr. Woods' tweet remained on his account as of that date and demanding that Mr. Woods delete the tweet and issue, through Twitter, a retraction of and apology for his false and defamatory assertion that Ms. Boulger was the woman pictured as giving the Nazi salute.

22. Later on March 22, Mr. Woods' lawyer responded by e-mail, denying that the tweet was defamatory and indicating that he had asked Mr. Woods to delete his tweet, which he did.

23. On March 23, 2016, Ms. Boulger's counsel again contacted Mr. Woods' counsel requesting a public retraction and apology.

24. On March 23, 2016, between about 12:29 p.m. and 12:32 p.m., Mr. Woods posted three new tweets:

    (i)     "I have an opportunity to clarify something I challenged immediately when it hit Twitter.  Portia A. Boulger was NOT the 'Nazi salute lady.'  "

    (ii)    "Ms. Boulder [sic] has reached out to me and asked me to use my many followers to stop people from harassing her.  I am more than happy to do so."

    (iii)   "Though she supports @BernieSanders, I am happy to defend her from abuse. I only wish his supporters would do the same for other candidates."

25.  The second and third of these tweets were false, insulting and demeaning as Ms. Boulger never asked Mr. Woods to "reach out to my many followers to stop people from harassing her."  Rather, Ms. Boulger, through counsel, had demanded a retraction and apology.

26. During the period from March 12, 2016 through March 23, 2016, while Mr. Woods' tweet remained posted on his Twitter account, Ms. Boulger received hundreds of obscene and threatening messages, including death threats.  A representative sample of these messages

posted on Twitter and Facebook, a number of which were posted after Mr. Trump Jr. had

removed his tweet while Mr. Woods' remained posted, and/or retweeted Woods' tweet.

includes the following:

"Hi Cunt. Just wanted to let you know the internet knows you're the 'fucking bleeding

cum oozing twat that was found giving a hitler salute and pretending to be a trump

supporter"

"Go fuck yourself you ignorant liberal sack of shit, then you can go suck Bernie Sander

cock!!!"

""Hope you get cunt cancer and die. What's wrong? Can't you win, honestly? You fucking

coward! I hope you go to one of your fucking rallies and get raped by a gaggle of thugs

with AIDS!"

"Off to buy me an evil gun with a couple of 15-round mags."

27. In addition, immediately after Mr. Woods' tweet was posted on March 12, 2016, Ms.

Boulger began receiving calls at her residence from callers who hung up when the phone

was answered. Those calls have continued to this day. One caller who called Ms.

Boulger in January 2017 stayed on the phone without talking, while Ms. Boulger heard

what sounded like someone walking up the gravel lane leading to her house.

## COUNT ONE--DEFAMATION

28. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully restated herein.

29. Defendant Woods' statement on his Twitter account that Ms. Boulger gave a Nazi salute

at the Trump rally on March 11, 2016, was false.

30. Mr. Woods' statement on his Twitter account that Ms. Boulger gave a Nazi salute at the

Trump rally on March 11, 2016 was an unprivileged publication to third parties, including

without limitation his 350,000 Twitter followers and more than 5,000 Twitter users who re-tweeted Mr. Woods' tweet, as well as an unknown number of followers of the Twitter users who retweeted Mr. Woods' tweet.

31. Mr. Woods made this false statement with the knowledge that the statement was false and/or with reckless disregard for the truth or falsity of the statement. Mr. Woods maintained the tweet (statement) on his Twitter account for more than ten days after numerous media outlets and Twitter users—including the Twitter user from which Mr. Woods originally obtained the photograph of the woman giving the Nazi salute and the separate photograph of Ms. Boulger—had reported that the woman giving the Nazi salute was not Ms. Boulger, and after Mr. Woods acknowledged that Portia Boulger may not be the woman giving the Nazi salute.

32. Mr. Woods made this false statement with the intention of harming Ms. Boulger.

33. The statement that Ms. Boulger was the woman giving the Nazi salute at the Trump rally reflected upon Ms. Boulger's character in a manner that caused her to be ridiculed, hated and held in contempt and in a manner that injured her in her profession as a teacher and tutor; and injured her reputation as a well-known progressive grassroots activist, a member of the Ross County Democratic Party Executive Committee and as a person well known local and nationally for her progressive activism though social media.

34. The statement that Ms. Boulger was the woman giving the Nazi salute at the Trump rally constitutes defamation *per se*.

35. Mr. Woods' false statement in fact harmed Ms. Boulger's reputation, by creating the understanding and impression among hundreds of thousands of people who saw Mr. Woods' tweet, that Ms. Boulger had associated herself with the Nazi movement and/or had

dishonestly attempted to injure Mr. Trump and his followers by pretending to be a Trump supporter while giving the salute.

36. As a direct cause of Mr. Woods' defamatory statement, Ms. Boulger has suffered severe emotional distress including sleeplessness, episodes of reasonable apprehension of personal assault or attack, anxiety and depression.

## COUNT TWO—FALSE LIGHT INVASION OF PRIVACY

37.  Plaintiff incorporates the preceding paragraphs of this Complaint as if fully stated herein.

38.  Mr. Woods' statement that Ms. Boulger was the woman who gave the Nazi salute placed Ms. Boulger before the public in a false light.

39.  The false light in which Ms. Boulger was placed would be highly offensive to a reasonable person, because Ms. Boulger was in fact an active volunteer for the Sanders campaign and was falsely made to look irresponsible and reckless as a Sanders volunteer trying to pose as a Trump supporter while making one of the most offensive gestures that could be made; and because Ms. Boulger is a teacher and the perception that she would give a Nazi salute either out of actual sympathy with the Nazi cause or in order to dishonestly disrupt a Trump campaign event by giving the salute while posing as a Trump supporter, would be extraordinarily offensive to anyone in her position.

40. As demonstrated by Mr. Woods' March 12 tweet, Mr. Woods had knowledge of the falsity of the statement that Ms. Boulger was the woman who gave the Nazi salute and/or acted in reckless disregard as to the falsity of the matter and the false light in which Ms. Boulger would be placed.

41. Mr. Woods' publicity of his statement placing Ms. Boulger in a false light in fact harmed Ms. Boulger's reputation, by creating the understanding and impression among the

8

hundreds of thousands of people who saw Mr. Woods' tweet, that Ms. Boulger had associated herself with the Nazi movement and/or had dishonestly attempted to injure Mr. Trump and his followers by pretending to be a Trump supporter while giving the salute.

42. As a direct cause of Mr. Woods' publicity placing Ms. Boulger in a false light, Ms. Boulger has suffered severe emotional distress including sleeplessness, episodes of reasonable apprehension of personal assault or attack, anxiety and depression.

WHEREFORE, the Plaintiff, Ms. Boulger, respectfully requests that this Court enter judgment in favor of Ms. Boulger and against Defendant James Woods and that Ms. Boulger be awarded damages to which she is entitled including:

A. Compensatory damages in an amount in excess of $1,000,000 to be determined at trial;

B. Punitive damages in an amount in excess of $2,000,000 to be determined at trial;

C. Attorneys' fees and costs; and

D. Such other and additional relief to which Plaintiff may entitled.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable by a jury.

Respectfully submitted,

/s/ Nathaniel Zachary West
Nathaniel Zachary West (0087805 )
511 West First Avenue, Unit 305
Columbus, OH 43215
Phone: (614) 208-0230
Email: zachwest1@gmail.com

OF COUNSEL

Joseph E. Sandler
SANDLER REIFF LAMB ROSENSTEIN
& BIRKENSTOCK P.C.
1025 Vermont Avenue, N.W.
Suite 300
Washington, D.C. 20007
Telephone (202) 479-1111
Fax:  (202) 479-1115
Email:  sandler@sandlerreiff.com

*Pro hac vice pending*

Attorneys for Plantiff
Portia Boulger