# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Portia A. Boulger, | : | |
| Plaintiff, | : | Case No. 2:17-cv-186 |
| v. | : | Judge George C. Smith |
| James H. Woods, | : | Magistrate Judge Elizabeth P. Deavers |
| Defendant. | : | |

## DEFENDANT JAMES H. WOODS' MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant James H. Woods ("Mr. Woods"), by and through the undersigned counsel, moves this Court, under Rule 12(c) of the Federal Rules of Civil Procedure, for an Order granting judgment on the pleadings and dismissing Plaintiff Portia A. Boulger's claims. The reasons in support of this Motion are more fully set forth in the attached Memorandum.

Respectfully submitted,

/s/ Patrick Kasson
Patrick Kasson (0055570)
Kari D. Hehmeyer (0096284)
**REMINGER CO., L.P.A.**
200 Civic Center Drive, Suite 800
Columbus, Ohio 43215
Phone: (614) 232-2418
Fax: (614) 232-2410
pkasson@reminger.com
khehmeyer@reminger.com
*Counsel for Defendant James H. Woods*

## MEMORANDUM IN SUPPORT

### I. PRELIMINARY STATEMENT

This case is simply an unsuccessful attempt by Plaintiff to quell the free speech rights of Mr. Woods, a conservative actor. Indeed, Plaintiff's claims for defamation and false light/invasion of privacy both fail as a matter of law. First, Plaintiff's claim for defamation fails as a matter of law because Mr. Woods' allegedly defamatory question is not a statement of fact. Nor would a reasonable reader interpret Mr. Woods' question—seeking clarification—as inferring any factual content. Likewise, Plaintiff's false light/invasion of privacy claim fails as a matter of law because no misrepresentation regarding Plaintiff's character, history, activities or beliefs is present in Mr. Woods' tweets, much less a misrepresentation that would warrant a reasonable person, in Plaintiff's position, to take the serious offense required to succeed on a false light/invasion of privacy claim.

### II. STATEMENT OF FACTS

Plaintiff Portia A. Boulger ("Plaintiff") is a "well-known progressive grassroots activist," and for several decades has been an activist for the Democratic Party on local and national levels. (Doc. #1, PageID 1, 7). On March 11, 2016, the Chicago Tribune newspaper posted on its Twitter account a photograph of a woman at the Donald Trump rally held in Chicago, Illinois, wearing a Donald Trump t-shirt and gesturing with her right hand an alleged "Nazi" salute (the "Photograph"). (Doc. #1, PageID 2). Later that evening, multiple Twitter account users re-posted the Photograph and misidentified Plaintiff as the woman in the Photograph. (Doc. #1, PageID 3).

On March 12, 2016, Twitter user Supreme Dark Lord (Twitter username @voxday) posted the Photograph together with a photograph of Plaintiff, a short bio, and tweeted, "The 'Trump

2

Nazi' is Portia Boulger, who runs the Women for Bernie Sanders Twitter account. It's another media plant." (*See* Doc. #1, PageID 3; *see also* @voxday March 12, 2016 Tweet, *attached hereto as* Exhibit A).

On March 12, 2016, Mr. Woods tweeted the Photograph along with a question: "So-called #Trump 'Nazi' is a #BernieSanders agitator/operative?" (the "Tweet"). (Doc. #1, PageID 3; *see also* Mr. Woods' March 12, 2016 Tweets, *attached hereto as* Exhibit B) (Emphasis added). Shortly after posting the question, Mr. Woods noted his question had been answered by posting two follow-up tweets on March 12, 2016 (the "Tweets"):

> Various followers have stated that the Nazi salute individual and the #Bernie campaign woman are NOT the same person. #Chicago #Trump.
>
> I'm not endorsing #Trump nor anyone else in this thread about the organized #Chicago #thug antics. I'm simply making some observations.

(Ex. B; *see also* Doc. #1, PageID 4).

On March 22, 2016, Mr. Woods deleted the question from Twitter. (Doc. #1, PageID 5).

On March 23, 2016, Mr. Woods posted the following three tweets (the "Tweets"):

> I have an opportunity to clarify something I challenged immediately when it hit Twitter. Portia A. Boulger was NOT the "Nazi salute lady."
>
> Ms. Boulder [sic] has reached out to me and asked me to use my many followers to stop people from harassing her. I am more than happy to do so.
>
> Though she supports @BernieSanders, I am happy to defend her from abuse. I only wish his supporters would do the same for other candidates.

(Doc. #1, PageID 5; *see also* Mr. Woods' March 23, 2016 Tweets, *attached hereto as* Exhibit C).

### III. LAW AND ANALYSIS

#### A. Rule 12(c) Standard.

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "For purposes of a motion for judgment on

3

the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). "[M]atters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" may be considered in evaluating Plaintiff's claims under this standard. *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). Additionally, "a court may consider exhibits attached to a motion for judgment on the pleadings 'so long as they are referred to in the Complaint and are central to the claims contained therein.'" *Roe v. Amazon.com*, 170 F.Supp.3d 1028, 1032 (S.D.Ohio Mar. 15, 2016) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

### B. Plaintiff's Defamation Claim Fails As A Matter Of Law Because The Allegedly Defamatory Question Is Not Actionable.

To establish defamation under Ohio law, the plaintiff must show "(1) a false statement of fact was made, (2) the statement was defamatory, (3) the statement was published, (4) the plaintiff suffered injury as a proximate result of the publication, and (5) the defendant acted with the requisite degree of fault in publishing the statement." *Anthony List v. Driehaus*, 779 F.3d 628, 632–633 (6th Cir. 2015) (quoting *Am. Chem. Soc. v. Leadscope, Inc.*, 978 N.E.2d 832, 852 (2012)). Plaintiff's failure to establish these elements is fatal to her claim. *Id.*

#### 1. Plaintiff cannot establish Mr. Woods' question was defamatory because it is not a statement of fact.

"For a statement to be defamatory, it must be a statement of fact . . . " *Brown v. Lawson*, 863 N.E.2d 215, 220 (Ohio Ct. App. 2006) (citing *Vail v. The Plain Dealer Publishing Co.*, 649 N.E.2d 182, 184 (Ohio 1995)). The determination of whether allegedly defamatory language is

4

fact is a question of law to be decided by the court. *Vail,* 649 N.E.2d at 184 (citing *Scott v. News-Herald,* 496 N.E.2d 699, 705 (Ohio 1986)). To determine whether a statement is fact, the court applies a totality-of-the-circumstances test, considering: (1) the specific language used; (2) whether the statement is verifiable; (3) the general context of the statement; and (4) the broader context in which the statement appears. *Vail,* 649 N.E.2d at 185; *Brown,* 863 N.E.2d at 220; *Wampler v. Higgins,* 752 N.E.2d 962, 970 (Ohio 2001). When all four factors are weighed in the instant case, it is apparent Mr. Woods' Tweet is, by definition, a question and not a statement of fact. Thus, it is not actionable.

### a. *Because the specific language used by Mr. Woods is a question, Mr. Woods' Tweet is not a statement of fact.*

Under the first step of the totality-of-the-circumstances test, "the specific language used must be reviewed, focusing on the common meaning ascribed to the words by an ordinary reader." *Vail,* 649 N.E.2d at 186. Specifically, the court must determine "whether the allegedly defamatory statement has a precise meaning and thus is likely to give rise to clear factual implications."[1] *Wampler,* 752 N.E.2d at 978. A reader is "less likely to infer facts from an indefinite or ambiguous statement than one with a commonly understood meaning," and thus, statements which are "loosely definable" or "variously interpretable" generally cannot support an action for defamation. *Id.* (quoting *Ollman v. Evans,* 750 F.2d 970, 979–980 (D.C. Cir. 1984)).

Here, the specific language used by Mr. Woods in the Tweet is not actionable. First, Mr. Woods' question was an inquiry—not an accusation—regarding whether Plaintiff was the woman in the Photograph. (*See* Ex. B). The language used by Mr. Woods would be understood by the ordinary reader for just what it is: one individual's inquiry into the veracity of the Photograph that

---

[1] "A classic example of a statement with a well-defined meaning is an **accusation** of a crime." *Wampler,* 752 N.E.2d at 978 (quoting *Ollman v. Evans,* 750 F.2d 970, 979–980 (D.C. Cir. 1984)) (emphasis added).

5

was circulating around the internet from multiple outlets. The Tweet ended with "?". (Ex. B). Moreover, when compared to the tweet by Twitter user Supreme Dark Lord—which actually **accuses** Plaintiff of being the woman in the Photograph[2]—it becomes even more apparent Mr. Woods' Tweet is unlikely to "give rise to clear factual implications," as Mr. Woods' Tweet was seeking clarification from his Twitter followers and other users by asking a question. *Wampler*, 752 N.E.2d at 978; (*See* Ex. B). After his question was answered, Mr. Woods tweeted Plaintiff was "NOT" the Nazi Salute Lady (Ex. B).

Second, Mr. Woods' Tweet is also not actionable because the word "Nazi" is "inherently imprecise and subject to myriad subjective interpretations." *Wampler*, 752 N.E.2d at 979. Several courts have consistently held that use of the term "Nazi" is rhetorical hyperbole, that is simply not actionable as a matter of law. *See Wanamaker v. VHA, Inc.*, 797 N.Y.S.2d 672, 673 (N.Y. App. Div. 2005) (reference to plaintiff as the "surgery Nazi" was rhetorical hyperbole and was not actionable as a matter of law); *Buckley v. Littell*, 539 F.2d 882, 890–892 (2d Cir. 1976) (accusation that a columnist was a "fellow traveler" of "fascists" was susceptible of widely different interpretations and thus not actionable); *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 453 N.E.2d 666, 669 (Ohio 1983) (describing plaintiff as "Little Hitler" and accusing him of operating "a Nazi concentration camp" was "mere hyperbole or rhetoric, and [was] an expression of opinion, not fact; and [was] protected").

A question, by definition, cannot be an assertion of fact. Even if it could be, the Tweet can be interpreted in various ways and is thus not actionable. *Vail*, 649 N.E.2d at 186. Therefore, the Complaint should be dismissed.

---

[2] Supreme Dark Lord (@voxday) tweeted, "**The 'Trump Nazi' is Portia Boulger**, who runs the Women for Bernie Sanders Twitter account. It's another media plant." (Ex. A; *see also* Doc. #1, PageID 3) (emphasis added).

6

> **b.** *Mr. Woods' Tweet is an inquiry, not an accusation, and is thus an unverifiable statement that cannot rationally be viewed as asserting actual facts.*

The second step under the totality-of-the-circumstances test considers whether the allegedly defamatory statement is verifiable. *Vail*, 649 N.E.2d at 185. The court asks, "[d]oes the author imply he has first-hand knowledge that substantiates the opinions he asserts?" *Id.* Where the alleged statement "lacks a plausible method of verification, a reasonable reader will not believe that the statement has specific factual content." *Id.* (citing *Scott*, 496 N.E.2d at 707); *see also Wampler*, 752 N.E.2d at 979 (the court seeks to "determine whether the allegedly defamatory statements are objectively capable of proof or disproof, for a reader cannot rationally view an unverifiable statement as conveying actual facts").

Here, Mr. Woods' Tweet is not verifiable, as Mr. Woods does not imply he has any first-hand knowledge to substantiate it. *See Vail*, 649 N.E.2d at 185. Rather, Mr. Woods <u>asked a question,</u> seeking clarification from his followers and other Twitter users—which clarification he received shortly thereafter—as evidenced by his subsequent tweets on March 12, 2016. (*See* Ex. B). The absence of any supporting references in Mr. Woods' Tweet further supports that the allegedly defamatory question is simply not verifiable. *See Wampler*, 752 N.E.2d at 980 (allegedly defamatory statements were not verifiable where defendant "provided no supporting references in his letter for any of the disparaging remarks he directed at [plaintiff]").

Moreover, Mr. Woods' question itself is not verifiable because it was an inquiry, not an accusation, thus negating any impression that Mr. Woods' allegedly defamatory statement implied a false assertion of fact. Mr. Woods' <u>use of a question mark</u> makes clear Mr. Woods' "lack of definitive knowledge about the issue." *Partington v. Bugliosi*, 56 F.3d 1147, 1157 (9th Cir. 1995). "A question can conceivably be defamatory, though it must reasonably be read as an *assertion* of

7

a false *fact*; inquiry itself, however embarrassing or unpleasant to its subject, is not an accusation. The language cannot be tortured to 'make that certain which is in fact uncertain.'" *Partington*, 56 F.3d at 1157 (quoting *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1094 (4th Cir. 1993)).

It is clear Mr. Woods' original Tweet represented Mr. Woods' personal inquiry based on limited available information. It was not a verifiable factual assessment of Plaintiff's conduct. As such, because Mr. Woods' Tweet was a question seeking clarification of the Photograph, never definitively stating that Plaintiff was the woman in the Photograph, it cannot reasonably be read as an assertion of a false fact, and is not actionable.

### c. *When reading Mr. Woods' March 12, 2016 Tweets the average reader would be unlikely to infer that Mr. Woods' Tweet was factual.*

The third step concerns "the general context of the statement." *Vail*, 649 N.E.2d at 185. This step requires the court to consider the "'immediate context' in which the allegedly defamatory statement appears." *Wampler*, 752 N.E.2d at 980 (quoting *Ollman*, 750 F.2d at 983). Further, courts should assess the entire written document because "unchallenged language surrounding the allegedly defamatory statement will influence the average reader's readiness to infer that a particular statement has factual content." *Id.* (quoting *Ollman*, 750 F.2d at 979); *see also DeVito v. Gollinger*, 726 N.E.2d 1048, 1051 (Ohio Ct. App. 1999) (acknowledging the entire column should be assessed because "the language of the entire column may signal that a specific statement which, sitting alone, would appear to be factual is in actuality a statement of opinion").

Here, when considering Mr. Woods' allegedly defamatory question in the context of Mr. Woods' Tweets on March 12, 2016, concerning Plaintiff, the average reader would be unlikely to infer that Mr. Woods' allegedly defamatory question was factual. *See Wampler*, 752 N.E.2d at 980; Ex. B. The gist of Mr. Woods' March 12, 2016, tweets – as a whole – reveal Mr. Woods was

8

seeking clarification of an internet rumor that was already circulating through various outlets. (*See* Ex. B). Once the question Mr. Woods asked had been answered by "[v]arious followers," Mr. Woods tweeted that Plaintiff was "NOT the same person" as the woman in the Photograph. (Ex. B). Moreover, given that Mr. Woods' allegedly defamatory statement appeared on his own personal Twitter feed, "the average reader viewing the words in their internal context would be hard pressed to accept [Mr. Woods'] statement as * * * impartial reporting." *Wampler*, 752 N.E.2d at 980 (quoting *Scott*, 496 N.E.2d at 708). Thus, there can be no question that the general context, in which Mr. Woods' Tweet was made, is not actionable.

### d. *Twitter, a social media platform powered by individual user accounts, is a common forum for individuals to express personal opinions on a wide variety of subjects.*

Finally, in addition to examining Mr. Woods' allegedly defamatory question as it appears in the general context of his tweets on March 12, 2016, the court must also examine "the broader social context into which the statement fits." *Wampler*, 752 N.E.2d at 981. Because some types of writing "by custom or convention signal to readers or listeners that what is being read or heard is likely to be opinion, not fact," this factor focuses on the "unmistakable influence that certain 'well established *genres* of writing will have on the average reader.'" *Id.* (citing *Ollman*, 750 F.2d at 983–984).

In *Wampler*, the defendant's allegedly defamatory statements appeared in a letter to the editor, which the court labeled as "a common forum for citizens of the community to express viewpoints on a wide variety of subjects." *Wampler*, 752 N.E.2d at 981. The court stated that the "vituperative wording" of letters to the editors "serve[d] to warn readers that, in contrast to the factual news articles appearing elsewhere in the paper, the letters [were] part of a 'social forum for personal opinion.'" *Id.* (quoting *Sall v. Barber*, 782 P.2d 1216, 1219 (Colo. App. 1989)).

9

Additionally, the court noted it was "commonly known that the authors of letters to the editor are normally not engaged in the business of factual reporting or news dissemination, and that their letters qualify as what the *Ollman* court described as a 'well establish *genre*' of opinionated speech." *Id.* at 981–82 (quoting *Ollman*, 750 F.2d at 984).

Similarly, in *Vail*, the allegedly defamatory statements appeared "on the Forum page of the newspaper, titled 'Commentary.'" *Vail,* 649 N.E.2d at 185. The court noted the words "forum" and "commentary" conveyed a message that the reader would be exposed to the personal opinions of the writer. *Id.* Such a column was distinguishable from a news story, which was expected to contain "only statements of fact or quotes of others, but not the opinion of the writer of the story." *Id.* Further, because the column at issue in *Vail* appeared "in the midst of a political campaign, which provided the subject for the column," this also persuaded the court that the statements were opinion, not fact. *Id.*

Likewise, Mr. Woods' allegedly defamatory question appeared on his personal Twitter account, in the midst of a highly-contested and widely-covered presidential political campaign. (*See* Ex. B). A personal social media account, such as an individual's Twitter account, cannot reasonably be interpreted as a forum for fact reporting. *See Vail*, 649 N.E.2d at 185. Rather, such a context is akin to a forum or editorial section of a newspaper where a reader would expect to see statements of opinion. *Wampler,* 752 N.E.2d at 981; *Vail,* 649 N.E.2d at 185. Additionally, Twitter, a social media platform powered by *individual* user accounts, can be described even more so as a "well established *genre* of opinionated speech," as it is commonly known the average Twitter user is not "normally engaged in the business of factual reporting or news dissemination." *Wampler,* 752 N.E.2d at 981–982 (citing *Ollman*, 750 F.2d at 984).

10

For these reasons, like the first three factors, the fourth factor requires dismissal. Under the totality-of-the-circumstances test, Mr. Woods' Tweet is, as a matter of law, a nonactionable question.

### C. Plaintiff's False Light/Invasion Of Privacy Claim Fails As A Matter Of Law Because Mr. Woods' Tweet Is Not Highly Offensive To A Reasonable Person.

To establish a claim for false light/invasion of privacy under Ohio law, the plaintiff must show "(1) the false light in which the [plaintiff] was placed would be highly offensive to a reasonable person, and (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the [plaintiff] would be placed." *Welling v. Weinfeld*, 866 N.E.2d 1051, 1059 (Ohio 2007). The Ohio Supreme Court has acknowledged that the above requirements "make a false-light claim difficult to prove." *Id.* at 1057. This is so because false light/invasion of privacy "applies only when the defendant knows that the plaintiff, as a reasonable [person], would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity." *Id.* Further, the plaintiff's privacy is "not invaded when the unimportant false statements are made, even when they are made deliberately." *Id.* at 1058. Rather, "[i]t is only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable [person] in his position, that there is a cause of action for invasion of privacy." *Id.*

Here, Mr. Woods' March 12, 2016 Tweets when read as a whole, do not seriously misrepresent Plaintiff's character, history, activities or beliefs such that a reasonable person would feel seriously offended. The gist of Mr. Woods' March 12, 2016 Tweets is Woods was inquiring about the Photograph that was already circulating on the internet from multiple sources. (*See* Ex. B). Mr. Woods' original Tweet did not definitively state that Plaintiff was the woman in the Photograph, nor did Mr. Woods make any statement that was false concerning Plaintiff's character,

11

history, activities or beliefs. (*See* Ex. B). It was a question. *Id.* Mr. Woods inquired about the identity of the woman in the Photograph. *Id.* When he received responses from his "[v]arious followers" that Plaintiff was "NOT the same person" in the Photograph, Mr. Woods tweeted this information as well. *Id.*

No Ohio court has ever held that a false light/invasion of privacy claim can be sustained simply because a person asked a question, seeking an answer. As such, Plaintiff's claim for false light/invasion of privacy fails as a matter of law.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's claims for defamation and false light/invasion of privacy should be dismissed.

Respectfully submitted,

/s/ Patrick Kasson
Patrick Kasson (0055570)
Kari D. Hehmeyer (0096284)
**REMINGER CO., L.P.A.**
200 Civic Center Drive, Suite 800
Columbus, Ohio 43215
Phone: (614) 232-2418
Fax: (614) 232-2410
pkasson@reminger.com
khehmeyer@reminger.com
*Counsel for Defendant James H. Woods*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served via this Court's ECF System, this 7th day of June, 2017, upon all counsel of record.

/s/ Patrick Kasson
Patrick Kasson (0055570)
Kari D. Hehmeyer (0096284)



**Supreme Dark Lord**
@voxday

The "Trump Nazi" is Portia Boulger, who runs the Women for Bernie Sanders Twitter account. It's another media plant.





8:02 AM · Mar 12, 2016

**2,153** RETWEETS    **1,392** LIKES

    



**James Woods** @RealJamesWoods 3/12/16
I'm not endorsing #Trump nor anyone else in this thread about the organized #Chicago #thug antics. I'm simply making some observations.

853

**James Woods** @RealJamesWoods 3/12/16
Various followers have stated that the Nazi salute individual and the #Bernie campaign woman are NOT the same person. #Chicago #Trump

244

**James Woods** @RealJamesWoods 3/12/16
So called #Trump "Nazi" is a #BernieSanders agitator/operative?




EXHIBIT B

| Tweets | Media | Likes |



**James Woods** @RealJamesWoods　7s

Though she supports @BernieSanders, I am happy to defend her from abuse. I only wish his supporters would do the same for other candidates.



**James Woods** @RealJamesWoods　1m

Ms. Boulder has reached out to me and asked me to use my many followers to stop people from harassing her. I am more than happy to do so.

20



**James Woods** @RealJamesWoods　2m

I have an opportunity to clarify something I challenged immediately when it hit Twitter. Portia A. Boulger was NOT the "Nazi salute lady."

29



EXHIBIT C